**CONSOLIDATED INDEMNITY & INS. CO. v. PORTLAND CONTRACTING CO., Inc., et al.**

No. 954.

District Court, D. Maine, Southern Division.

Jan. 24, 1934.

Verrill, Hale, Booth & Ives, of Portland, Me., for plaintiff.

Sanford Fogg, Deputy Atty. Gen., for State of Maine, and various other counsel for defendants.

PETERS, District Judge.

This is a bill in equity brought by a New York corporation, doing a surety business, against the Portland Contracting Company, Inc., and some sixty other citizens of Maine, including the treasurer of the state, in which it is alleged, among other things, that in April, 1932, the Portland Contracting Company, hereinafter referred to as the contracting company, made a written contract with the state of Maine, through its highway commission, to construct a piece of state highway in the eastern part of the state for the sum of $140,379.90; that the contracting company, as principal, gave a bond running to the state treasurer in the sum of $70,189.95, containing the following condition:

"The condition of this obligation is such that if the Principal designated as Contractor in the foregoing contract, shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same and shall pay all bills for labor, material, equipment, and for all other things contracted for or used by him in connection with the work contemplated by said contract, and shall fully reimburse the obligee for all outlay and expense which the obligee may incur in making good any default of said Principal, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The bill alleges that the signature and seal of the plaintiff were fraudulently attached to said bond by persons acting without authority. It further appears from the allegations in the bill that the contracting company met with financial difficulties and was unable to complete the work contemplated by the contract which was taken over and finished by the state at a cost which left a deficit of $86,456.02 for the contractor to pay, including in this sum $67,104.21 which the contractor owed various persons, defendants herein and others, in connection with the work, and which the contractor was unable to pay.

The plaintiff alleges that it is threatened with a multiplicity of suits by these numerous creditors of the contractor so long as the bond referred to remains outstanding and uncanceled, and that such suits may result in judgments against it totaling more than the penalty of the bond.

Claiming that it has no adequate remedy at law, plaintiff asks that the bond be canceled, so far as the plaintiff purports to be a party thereto. An injunction is also asked for restraining proceedings against the plaintiff on the bond.

Several answers have been filed, including motions to dismiss. The jurisdiction of this court is invoked by the plaintiff on the ground of diversity of citizenship with the necessary jurisdictional amount involved. Jurisdiction in equity is asserted on the ground that the bill is filed to avoid a multiplicity of suits.

The motions to dismiss raise as by demurrer the sufficiency of the allegations to give the court jurisdiction in equity. The state treasurer also in his answer questions he propriety of any injunction against him as an official of the state.

The action cannot be maintained if a case is not stated plainly within the equity jurisdiction of this court.

The Judicial Code, § 267 (28 USCA § 384), declares that suits in equity shall not be sustained in the courts of the United States "in any case where a plain, adequate, and complete remedy may be had at law." The Supreme Court in the recent case of Mathews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, says that the effect of that section which was but declaratory of the rule in equity, established long before its adoption, is to emphasize the rule and forbid in terms recourse to the extraordinary remedies of equity where the right asserted may be fully protected at law.

As previously stated, equity jurisdiction is invoked here on the ground that it is necessary to avoid a multiplicity of suits. It is true that the court is asked to relieve the plaintiff from the consequences of an alleged fraud, but, if such occurred, that defense can now be made adequately in any suit at law that may be brought on the bond in question. A breach of the bond has already occurred. It is not a question of reformation or cancellation before breach.

■ "A Court of Equity ought not to interfere on the ground of multiplicity of suits unless it is clearly necessary to protect a plaintiff against vexatious litigation." Hale v. Allenson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380; Boise Artesian Hot & Cold Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796.

■■ What is the situation disclosed as to the probability of the plaintiff here being unduly harassed by numerous suits? From statements made by counsel at the hearing, it appears that the treasurer of the state of Maine has brought a suit in the state court against this plaintiff to recover the penalty of the bond presumably to cover the deficit caused by the contractor's default, including the amount due the various creditors of the contractor including those made defendants herein. Their rights and interests being thus involved, there is no reason to think that they will now proceed with separate suits against this plaintiff, and no showing of any intention to do so. The question of the validity of the bond, so far as the plaintiff is concerned, obviously would be raised and decided in that suit. No more than the amount of the penalty of the bond could be recovered in any event. As a practical proposition, using the discretion and caution that

a court is bound to use before interfering with the lawful prosecution of their rights by citizens, including their right to a trial by jury, it is apparent that there is no showing here of any clear necessity to protect the plaintiff from unnecessary litigation. Something more than a possibility must be shown. It must be a real danger.

"Again it has been held that if danger of vexatious suits by the same party or numerous parties is the ground of jurisdiction alleged by the single complainant, he must show more than a mere possibility of such litigation; the danger to which he is exposed must be a real one." Pomeroy's Equity Jurisprudence (4th Ed.) par. 251¾.

Moreover, while there appears to be some diversity of opinion, the weight of authority is to the effect that in a case like this, third parties, not parties to the contract and not persons for whose benefit the contract was primarily made, cannot sue directly on the contract. As is said in the case of Parker v. Jeffery, 26 Or. 186, 37 P. 712, 713: "The doctrine (of third party) is not applicable to every contract made by one person with another from the performance of which a third person will derive a benefit, but is limited to contracts which have for their primary object and purpose the benefit of a third person, and which were made for his direct benefit." Citing numerous cases. Standard Gas Power Corp. v. N. E. Casualty Co., 90 N. J. Law, 570, 101 A. 281, and cases cited.

From the wording of this contract, the bond in question, it is only incidentally for the benefit of third persons. It is primarily for the benefit of the obligee, the treasurer of the state of Maine, as is shown by the concluding words of the condition which provide that the contractor "shall fully reimburse the obligee for all outlay and expense which the obligee may incur in making good any default of said principal."

But, regardless of any general principles which would preclude the defendants herein, other than the state officials, from bringing any suit against the surety on this bond, it is well settled in Maine that, "where one covenants with another by deed, under his own hand and seal, to pay him money for his own use or for the use of another, the obligee alone can sue upon the covenant." Baldwin v. Emery, 89 Me. 496, 36 A. 994, 995; Harvey v. Milk Co., 92 Me. 115, 42 A. 342, 344. The latter case gives also another reason, applicable here, why creditors could not sue directly on such a bond: "The agreement of the defendant was 'to pay all outstanding debts and liabilities,' without names of creditors, without amounts of debts, and without any designation or limit whatsoever. 'It is a general rule of law,' says Judge Gray, in Carr v. National Security Bank, 107 Mass. 45 [9 Am. Rep. 6], 'that upon a promise made by one person to another for the benefit of a third, from whom no consideration moves, the latter cannot sue; and the exception to this rule, which holds a person in whose hands funds have been placed to pay creditors of the depositor, liable to actions by them, has not been extended, in this commonwealth or in England, to a case in which neither such creditors nor the amount of their debts are named or ascertained at the date of the promise.' "

It is clear that these third parties, merely creditors of the contractor, cannot maintain any suits against the plaintiff herein in the courts of Maine.

The plaintiff suggests the possibility of suits in equity being brought against it by the contractor's creditors. The danger of such a thing is not apparent, but if the plaintiff is sued in equity, it can have any equitable remedies for its protection then applicable to the situation.

It may very well be, as suggested by counsel, that this court is without power in the matter of injunction, as the state of Maine is interested as a party. The obligee in the bond is the treasurer of the state in his official capacity. No copy of the contract is attached to the bill or has been submitted. It is alleged in the bill, however, that the contract was entered into with the state of Maine, through the state highway commission. In view of the other substantial reasons for dismissing the bill, I have not thought it necessary to consider this point.

I am satisfied that a case has not been shown justifying the intervention of this court in equity as prayed for.

The bill is dismissed without costs.