G. E. LOTHROP THEATRES CO. vs. THE EDISON ELECTRIC
ILLUMINATING COMPANY OF BOSTON.

Suffolk. April 4, 1934. — March 25, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract*, Implied, For the furnishing of electricity. *Practice, Civil,*
Case stated. *Electricity. Sale*, Transfer of title, Of electricity. *Con-
version.. Damages*, For breach of contract, For tort.

At the hearing of an action upon a case stated, all questions of pleading
are waived and the only question open is whether the plaintiff can
recover in any form of action.
An electric company made with the lessee of a business building a con-
tract to supply him with current for his use at the wholesale rate,
and a meter was installed for the purpose. A tenant of the lessee
was expected to procure his current directly from the company. He
made with the company a contract for current at the retail rate,
which was substantially larger than the wholesale rate. By an inno-
cent mistake of the company, the separate meter designed to measure
current so supplied to the tenant was connected for a period with the
wire on which was the lessee's meter, so that current used by the tenant
during that period registered on both meters and was paid for by both
the tenant, at the retail rate, and by the lessee, at the wholesale rate.
*Held*, that, although the electric company was obliged in equity and
good conscience to repay to the lessee the amount which the lessee
had paid, at the wholesale rate, for current so used by the tenant, the
company was under no contractual obligation of any sort to pay to the
lessee the amount which it had collected from the tenant, at the retail
rate, for such current.
Discussion by RUGG, C.J., of the nature of electricity.
Electric current can be the subject of a sale.
In the circumstances above described, title to the current used by the
tenant did not pass to the lessee when it flowed through the lessee's
meter: the electric company did not intend to appropriate such current
to its contract with the lessee, nor did the lessee intend to take title
thereto.
Assuming that electric current can be the subject of conversion, no con-
version by the electric company of the current used by the tenant
appeared in the circumstances above described.
Even if it were assumed that such current could be the subject of con-
version and that the electric company converted it, the lessee's damages
for such a conversion would be merely the sum which he had paid the
company for such current at the wholesale rate.

CONTRACT. Writ dated June 26, 1933.

The action was heard in the Superior Court by *Donnelly*, J., upon a case stated and certain evidence. Material facts are stated in the opinion. The judge found for the plaintiff in the sum of $47.31 and reported the action for determination by this court.

*E. A. Whitman*, for the plaintiff.

*F. M. Ives*, for the defendant.

RUGG, C.J. This action is brought to recover amounts collected by the defendant from subtenants of the plaintiff for electricity furnished them at retail rates for which the plaintiff had already paid the defendant at wholesale rates. The defendant before trial filed an offer of judgment under G. L. (Ter. Ed.) c. 231, §§ 74, 75, in the sum of $55, which the plaintiff declined to accept. The case was tried upon a case stated and upon evidence admitted under rights reserved. The finding was in favor of the plaintiff for $44.90 with interest and costs up to the date of the defendant's offer of judgment. The only present issue between the parties relates to damages.

The case stated shows these facts: The plaintiff was lessee of a building in Boston in which it operated a theater. It contracted for its supply of electricity with the defendant, an electric company subject to G. L. (Ter. Ed.) c. 164, and furnishing electricity in Boston and elsewhere. In order to perform this contract, the defendant extended its wires from the street into the basement of the plaintiff's building, where they were connected with the building wiring installed by the plaintiff's lessor and controlled by the plaintiff. For measuring the electricity thus supplied, the defendant installed its meter in the basement in the place known as the meter loop, provided by the plaintiff's lessor. The charges under the contract were in accordance with the defendant's general wholesale rate D. The plaintiff let rooms in its building to tenants. It did not offer or intend to furnish electricity to its tenants. They were expected to purchase their electricity from the defendant. On the application of one such tenant the defendant in-

stalled a meter in the meter loop provided by the tenant and supplied that tenant with electricity under its retail rate A, a much higher price than that paid by the plaintiff. On the application of another such tenant, the defendant installed another meter in a meter loop provided by that tenant and supplied electricity to that tenant under its retail rate F, also a higher price than that paid by the plaintiff. The building wiring consisted of two sets of wires, of which one set was connected with the defendant's service wires through the plaintiff's meters and the other set was connected with the defendant's service wires but not through the plaintiff's meters. It was later discovered that the meters of these two tenants were both connected with the set of wires which ran through the plaintiff's meters. Thus the electricity supplied to these tenants, for which they paid the defendant according to their respective meters at retail rates, also passed through and registered on the plaintiff's meter, was included in the plaintiff's bills, and has been paid for by it at its wholesale rate. The fact that the electricity used by the tenants passed through and registered on the plaintiff's meter affected in no way the rate, but only the amount, charged it. According to un-contradicted testimony, the plaintiff paid for the electricity thus supplied to its tenants $44.90 more than it ought to have paid for the electricity used by it at the rate due under its contract, and the defendant collected from these tenants at the retail rates due from them $253.45.

This case was submitted on a case stated supplemented by oral testimony admitted under rights reserved. It appears to have been tried upon the theory that all questions of pleading were waived and that the only question open was whether the plaintiff could recover in any form of action, as is the rule respecting a trial on a case stated. *Elliott* v. *Worcester Trust Co.* 189 Mass. 542. *Boston & Maine Railroad* v. *T. Stuart & Son Co.* 236 Mass. 98, 104. *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 596. The trial judge reported the case with the provision that, if his rulings and finding in accordance therewith constitute error,

then the required judgment is to be entered by this court. Subject to these terms, the case will be treated as the parties treated it at the trial.

The writ described the action as in contract. Briefly stated, it was alleged in the first count that the plaintiff entered into a contract with the defendant for a supply of electrical current for premises of the plaintiff at a stipulated rate, that the plaintiff has leased certain offices to subtenants from whom the defendant has collected according to meters installed therefor charges for electricity passing through the plaintiff's wiring and already paid for by the plaintiff; wherefore the defendant owes the plaintiff the amounts collected from the subtenants. The second count is for money had and received by the defendant for the plaintiff's use. The trial judge ruled rightly that the plaintiff could not recover under the first count. If it be regarded as in contract, the agreed facts and evidence do not support any such contract. There is nothing to indicate that the defendant agreed with the plaintiff to furnish all the electricity used in the building of the plaintiff. The tenants expected to pay the defendant and were obliged to pay the defendant alone. *Boston Ice Co.* v. *Potter*, 123 Mass. 28. The plaintiff did not offer or intend to furnish electricity to its tenants. The mistake in the connection of the wiring was an innocent one so far as concerns the defendant. It cannot rightly be held on this record that it was due to the negligence of the defendant, or to wrongdoing on its part. *Brunelle* v. *Lowell Electric Light Corp.* 188 Mass. 493. The count for money had and received is broad and includes all money received by the defendant which in equity and good conscience belongs to the plaintiff. *Sherman* v. *Werby*, 280 Mass. 157, 160. *Montgomery Door & Sash Co.* v. *Atlantic Lumber Co.* 206 Mass. 144, 155. It was the intention of the plaintiff and the defendant that the latter should sell electricity directly to the tenants of the plaintiff. The plaintiff's lessor provided a set of wires for this purpose. There was no error on the part of the defendant in collecting from the tenants the contract price for the electricity supplied to them. The error arose from using the wrong set of wires for this pur-

pose. The fault for this error, if any, cannot be determined on this record. There is no basis for a finding that the defendant agreed to account to the plaintiff for the amounts received from the tenants, or was liable as trustee or otherwise for such amounts.

The only statement in the record touching the nature of electricity is the testimony of the witness who, in answer to the question whether the electricity was delivered to the plaintiff at the building, replied that electricity is an intangible thing, that it went through the plaintiff's wiring into and through the tenants' meters and into their lamps and power equipment, and that that was as far as he could go in saying where the electricity was delivered. The precise nature of electricity in the present state of science can hardly be regarded as matter of common knowledge or as a subject of judicial notice, although some of its manifestations are well known. It can be the subject of sale. It may be conceded that there is in such a transaction something corresponding to delivery in the sale of a tangible chattel. It has been held to be the subject of larceny. *United States* v. *Carlos*, 21 Phil. 553. With respect to interstate commerce, electricity has been treated as something delivered with transfer of title on a wire at specified points. *Public Utilities Commission of Rhode Island* v. *Attleboro Steam & Electric Co.* 273 U. S. 83. There may be cases where electricity will be considered a commodity subject to sale and delivery rather than a service furnished by the generating company. Where the contract is to sell unascertained goods, title cannot pass until goods are set apart and appropriated to the contract. G. L. (Ter. Ed.) c. 106, § 19. There was no appropriation in any event, in the case at bar, until the electricity reached and passed the plaintiff's meter. There is no doubt on the record as to the intent of the plaintiff, the defendant, and the tenants. When the electricity used by the tenants passed the plaintiff's meter, the plaintiff had no knowledge of it and no intent to take title to it. The intent of the defendant was to pass title not to the plaintiff but to the tenants. The tenants' intention was to buy of the defendant, not of the plaintiff. There was no actual intent on

the part of the defendant to appropriate the electricity under its contract with the plaintiff so as to pass title to it. There is no unequivocal conduct which requires the result that title to the electricity actually used by the tenants passed from the defendant to the plaintiff.

If it be assumed that there can be conversion of electricity, there was no such tortious act by the defendant. The attachment by the defendant of its service wires to the wires of the plaintiff was not wrongful but pursuant to its contract with the plaintiff. The installing of meters in the places designated by the tenants was not a conversion. The act of the tenants using electricity was not a conversion by the defendant. The result might be different if fault for the connection with the wrong set of wires was fastened on the defendant.

If, however, it be assumed in favor of the plaintiff, but without so deciding, that the defendant converted its electricity, there was no error in the action of the trial judge. The plaintiff prevailing in an action of trover is entitled to recover the value of the goods at the time and place of conversion. *Glaspy* v. *Cabot,* 135 Mass. 435, 439. *State Street Trust Co.* v. *Lawrence Manuf. Co.* 284 Mass. 355, 362. That is but one aspect of the general principle of damages that the plaintiff is to be made whole and compensated for what he has lost. *Rockwood* v. *Allen,* 7 Mass. 254, 256. *Sullivan* v. *Old Colony Street Railway,* 197 Mass. 512, 516. *Lowrie* v. *Castle,* 225 Mass. 37, 47. The plaintiff was buying electricity at the wholesale rate. Its only damage was in paying for a larger quantity at that rate than it ought to have paid. It could replace all it lost at that rate. It cannot recover on the basis of sales at retail. It cannot claim a greater benefit than if the act had never been committed. *Hall* v. *Paine,* 224 Mass. 62, 65. 4 Sutherland on Damages (4th ed.) § 1098. See *Gruman* v. *Smith,* 81 N. Y. 25; *Brewster* v. *Van Liew,* 119 Ill. 554; *Sears* v. *Lydon,* 5 Idaho, 358, 364; *Nightingale* v. *Scannell,* 18 Cal. 315, 325; *State* v. *Smith,* 31 Mo. 566, 572. The damages awarded by the trial court compensated the plaintiff for all the loss sustained by it. They were for the amount due for money

had and received by the defendant to the plaintiff's use. That is the form of relief appropriate for the wrong shown by the record. That was all to which it was entitled. The rulings were right.

*Judgment for the plaintiff on the finding.*